597 So.2d 1039 (1992)
Terrie TUGWELL
v.
STATE FARM INSURANCE COMPANY and Zurich Insurance Company.
No. CA 91 0019.
Court of Appeal of Louisiana, First Circuit.
March 6, 1992.
Writ Granted June 26, 1992.
*1040 Joseph L. Waitz, Houma, for plaintiff-appellant, Terrie Tugwell.
Richard Creed, Jr., Baton Rouge, for defendant-appellee State Farm Mut. Auto. Ins. Co.
O'Neal Walsh, Baton Rouge, for defendant-appellee Zurich Ins. Co.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This action is a suit seeking uninsured motorist (UM) benefits under three policies of insurance. The plaintiff, Terrie Tugwell, was a guest passenger in an insured automobile that was in a collision with an automobile driven by an uninsured driver. The automobile in which Tugwell was a passenger had primary liability and UM coverage of $100,000 with State Farm Mutual Automobile Insurance Company (State Farm) and excess (umbrella) liability coverage of $1,000,000 with State Farm. Tugwell also had $300,000 UM coverage available to her through a policy of insurance issued to her mother by Zurich Insurance Company (Zurich). Tugwell filed this suit against State Farm and Zurich. A bifurcated trial on the issue of liability was held and the driver of the uninsured automobile was found to be totally at fault. No appeal was taken from this judgment. Tugwell and Zurich filed a joint motion for summary judgment requesting a ruling that "State Farm's umbrella policy provides the primary uninsured motorist coverage on the Thompson vehicle [the vehicle in which Tugwell was a passenger] for the benefit of plaintiff, Tugwell, in the amount of $1,000,000 and that Zurich's UM coverage is excess over the State Farm umbrella coverage." State Farm filed a cross motion for summary judgment asserting that UM coverage had been validly waived for the umbrella policy and requested that judgment be rendered "holding that State Farm only provided $100,000 in uninsured motorist coverage." The trial court denied the motion for summary judgment by Tugwell and Zurich and granted summary judgment in favor of State Farm stating that State Farm's "liability is limited to $100,000 in uninsured motorist coverage." The trial court's judgment did not (1) render a money judgment against State Farm, or (2) dismiss State Farm as a party defendant *1041 in these proceedings. Tugwell and Zurich took this devolutive appeal.

BASIC FACTS
On April 4, 1987, Sherri Thompson was driving a 1985 Toyota automobile owned by her father, Jimmy C. Thompson, at the intersection of Corporate Boulevard and Energy Drive, in the City of Baton Rouge, Louisiana. Terrie Tugwell was a guest passenger in the Thompson vehicle. At this same time and place Albert Hammond, Jr. was driving his 1976 Oldsmobile Cutlass, and there was a collision between the Thompson vehicle and the Hammond vehicle.

FACTS CONCERNING UM INSURANCE COVERAGE BY STATE FARM
On July 31, 1983, Jimmy Thompson applied to State Farm[1] for a "personal liability umbrella" policy of insurance with a $1,000,000 limit of liability. In the underwriting section of the application, Thompson was asked to "LIST ALL MOTOR VEHICLES OWNED OR LEASED BY THE APPLICANT OR ANY HOUSEHOLD MEMBER OR FURNISHED FOR THE REGULAR USE OF THE APPLICANT BY EMPLOYER", and he listed a 1981 Datsun and a 1983 Lincoln. Thompson also was asked in the underwriting section to list all motorized vehicle operators, and he listed himself, his wife (Arlene C.) and his daughter (Sherri). Thompson also signed a portion of the application entitled "REJECTION OF UNINSURED MOTORISTS COVERAGE" which stated that "In keeping with the provisions of the laws of my state, I have been offered the opportunity to purchase Uninsured Motorists coverage, and I hereby reject Uninsured Motorist coverage as a part of this application." An underwriting information sheet accompanying the application shows (1) Thompson had 2 autos which were used by 3 drivers, (2) there was no uninsured motorist premium, (3) Thompson had 2 State Farm auto policies, ## XXX-XXXX-XX and XXX-XXXX-XX, and (4) Thompson had a new "Fire: HO (H)" policy.
State Farm issued to Thompson personal liability umbrella policy # XX-XX-XXXX-X effective August 1, 1983, for a policy period of 12 months. The declarations page of this policy provided for automatic renewal by stating that "If the policy period is shown as 12 months, this policy will be renewed automatically subject to the premiums, rules, and forms in effect for each succeeding policy period. If the policy is terminated, we will give written notice in compliance with the policy provision or as required by law." The declarations page of this policy also showed that Thompson was required to carry minimum underlying (primary) insurance coverage for (1) automobile liability, (2) recreational vehicle liability, (3) comprehensive personal liability, (4) farmers comprehensive liability, and (5) watercraft liability.
On February 4, 1985, Thompson applied to State Farm for automobile insurance on a 1984 Lincoln with primary limits of $500,000 for liability and UM coverage. This application indicated that this vehicle would be driven by Thompson, Tom Nolan and Richard Walsh, and that Nolan and Walsh were Thompson's partners. This policy was assigned policy # XXX-XXXX-XXX-XXA.
State Farm issued policy # XXX-XXXX-XXB to Thompson for the 1985 Toyota automobile which was involved in the accident herein. This policy had primary insurance limits of $100,000 per person and $300,000 per accident for liability and UM coverages. This policy replaced policy XXX-XXXX-XXA. The declarations page of this policy states that "A PERSONAL LIABILITY UMBRELLA POLICY EXISTS POLICY NUMBER XXXXXXXXX."
Thompson did not timely pay the $155 annual premium due on the umbrella policy on August 1, 1986. On August 19, 1986, a policy renewal questionnaire was filled out for this policy. This questionnaire sought *1042 information on Thompson's underlying (primary) policies for (1) automobile liability, (2) homeowners liability, (3) rental property liability, (4) watercraft liability, and (5) office liability. Under the automobile liability section, Thompson indicated that he had 5 autos and no farm or recreational vehicles. He listed the number of drivers as 4, with 2 under the age of 25 years. In the remarks section, the following were listed: "Sherry DOB: 10-7-66" and "Julie DOB: 11-1-68". He listed State Farm as his automobile liability insurance carrier and gave 5 policy numbers: 521-3358; 521-3359; illegible; 538-3661; and 538-3662. In response to the question "Is any change desired in Uninsured/Underinsured Motorist coverage under the Personal Liability Umbrella Policy?", the questionnaire shows a response of "No". Under the homeowners liability section Thompson indicated that his current insurance carrier was State Farm under policy # 18-25-2000-5-F.
On August 26, 1986, State Farm wrote to Thompson and advised as follows:
As of the "Date Processed" shown above [August 26, 1986], we have not received the premium required to keep this policy in force. Therefore, this policy is canceled effective the "Date Canceled" date shown hereon [October 5, 1986]. ... If full premium payment has been made and/or is received and accepted prior to or on the date of cancellation, you will receive a Notice of Reinstatement, verify[ing] continuous and uninterrupted coverage under this policy.
This communication references policy number XX-XX-XXXX-X.
On or before August 29, 1986, Thompson paid the overdue premium. On August 29, 1986, State Farm sent Thompson a "Notice of Reinstatement" stating "We are pleased to acknowledge receipt of the premium due on this policy. This policy will be continued in force subject to its printed terms and conditions payment check clearing through your bank." This communication references policy number XX-XX-XXXX-X. The "reinstatement" date is listed as August 1, 1986.
The personal liability umbrella policy issued by State Farm to Thompson was renewed effective August 1, 1986, for a period of 12 months, is filed as an exhibit with State Farm's motion for summary judgment, and has policy number XX-XX-XXXX-X. The declarations page of the policy shows that Thompson was given personal liability coverage with a limit of liability of $1,000,000 and was given no UM coverage. He was required as part of the insuring agreement to maintain underlying (primary) insurance coverage in various minimum limits for (1) automobile liability, (2) recreational vehicle liability, (3) comprehensive personal liability, (4) watercraft liability, (5) rental property liability, (6) business premises liability, and (7) professional liability. The coverage provided by this policy is set forth as follows:
Personal Liability: If you are legally obligated to pay damages for a loss, we will pay your net loss minus the retained limit. Our payment will not exceed the amount shown on the Declarations Page as Policy LimitsCoverage LPersonal Liability.
(Bolding in original)
The extent of this coverage is shown by the definitions set forth in the policy as follows:
1. Automobile: A land motor vehicle, trailer or semi-trailer. This does not include recreational motor vehicles, farm tractors, trailers and implements.
2. Business: A trade, profession or occupation, other than farming.
3. Business Property: Property on which a business is conducted, or; property rented or held for rental in whole or in part to others.
4. Insured:
a. the named insured and:
b. the following residents of the named insured's household:
(1) the named insured's relatives,
(2) anyone under the age of 21 under the care of a person named above.
c. any person or organization while using or holding an automobile, recreational motor vehicle, or watercraft owned, rented by, or loaned to the *1043 named insured, provided that the named insured gave permission for the type of use. A person or organization is not an insured if the use or custody is in the course of an automobile sales or service business or without the named insured's permission.
5. Loss: An accident that results in personal injury or property damage during the policy period. This includes injurious exposure to conditions.
6. Named Insured: The person named in the Declarations and the spouse. The spouse must be a member of the same household.
7. Net Loss:
a. the amount you are legally obligated to pay as damages for personal injury or property damage; and
b. all reasonable expenses you incur in the investigation, settlement and defense of any claim or suit at our request. This does not include expenses covered by another policy, expenses we insure under the Defense and Settlement section of this policy and salaries of your employees.
8. Personal Injury:
a. bodily injury, sickness, disease, shock, mental anguish or mental injury.
b. false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution or humiliation.
c. libel, slander, defamation of character or invasion of rights of privacy.
d. assault and battery.
9. Property Damage: Injury or destruction of tangible property. This includes the loss of use caused by the injury or destruction.
10. Recreational Vehicle: A land vehicle designed for use off public roads and not subject to any motor vehicle registration law. This does not include farm tractors, trailers and implements.
11. Relative: Any person related by blood, adoption, or marriage to the named insured.
12. Retained Limit: Either:
a. the total limits of liability of any underlying insurance you may collect. The limits listed in the Declarations are the minimum you must maintain or
b. the amount shown on the Declarations as the "Self-Insured Retention". This amount applies only if this policy applies but your required underlying insurance does not provide coverage for the loss.
(Bolding in original)
The policy excludes the following from coverage:

EXCLUSIONS
We will not provide coverage:
1. if you are liable under a workers' compensation, unemployment compensation, disability benefits law or any similar law.
2. if you intended to cause the personal injury or property damage. We will not apply this exclusion if:
a. you were acting in good faith to protect people or property; and
b. your actions were not fraudulent, criminal or malicious.
3. for property damage to:
a. your own property.
b. aircraft you rent, use, or hold for others.
c. rented, borrowed or held property for which you promised to provide insurance.
4. for any loss involving your handling or use of any aircraft.
5. for a loss caused by providing or failing to provide any professional service.
6. for a loss caused by your business operations unless underlying insurance listed on the Declarations Page provides coverage for the loss. This exclusion will not apply to your private automobile or watercraft for incidental business use if:
a. your underlying policy applies to the loss and;
b. the automobile or watercraft is not for hire.
7. for a loss caused by your act or omission as a member of a corporation's *1044 board of directors. This exclusion will not apply if the corporation:
a. was formed as a not-for-profit corporation; and
b. does not involve your business.
8. for a loss caused by pollution to land, water or air unless it is sudden and accidental.
9. for personal injury to the named insured, spouse, or anyone within the meaning of part a. or b. of the definition of insured.
10. for a loss caused by illegal discrimination.
The accident occurred on April 4, 1987.

JURISDICTION
Pursuant to La.Const. of 1974, art. V, § 10(A), a court of appeal has appellate jurisdiction of all civil matters as provided by law and has supervisory jurisdiction over cases which arise within its circuit. Pursuant to La.C.C.P. art. 2083, appealable judgments in civil cases are (1) final judgments rendered in causes in which appeals are given by law and (2) interlocutory judgments which may cause irreparable injury. La.C.C.P. art. 1841 provides as follows:
A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled. It may be interlocutory or final.
A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment.
A judgment that determines the merits in whole or in part is a final judgment.
In their appellate brief, Tugwell and Zurich contend the trial court erred by granting the summary judgment in favor of State Farm and by denying their motion for summary judgment.[2] Pursuant to La. C.C.P. art. 968 "An appeal does not lie from the court's refusal to render any judgment on the pleading or summary judgment." Thus, the trial court judgment which denied the Tugwell-Zurich motion for summary judgment is not an appealable judgment as a matter of law.
The relief sought by Tugwell in the prayer of her petition is a money judgment against State Farm and Zurich. The relief sought by State Farm in the prayer of its answer to Tugwell's petition is "for judgment in its favor and against Plaintiff, rejecting her demands, and dismissing her suit, at her cost." The summary judgment granted in favor of State Farm states that "State Farm Mutual Automobile Insurance Company's liability is limited to $100,000.00 in uninsured motorist coverage." This judgment does not determine the merits of the case, in whole or in part, and does not grant any of the relief requested. This judgment is an interlocutory judgment and not a final judgment. Anderson v. F. Christiana & Company, Inc., 590 So.2d 1343 (La.App. 5th Cir.1991); Med-Trans, Inc. v. Rockwood Ins. Co., Inc., 509 So.2d 602 (La.App. 3d Cir.1987); Wilkinson v. State Farm Mutual Automobile Insurance Company, 378 So.2d 167 (La.App. 1st Cir.1979); Smith v. Hanover Insurance Company, 363 So.2d 719 (La.App. 2d Cir. 1978). Cf. Dryades Savings and Loan Association v. Lassiter, 400 So.2d 894 (La. 1981); Landry v. John E. Graham & Sons, Inc., 533 So.2d 975 (La.App. 1st Cir.), writ denied, 534 So.2d 431 (La.1988); Stock v. City-Parish of East Baton Rouge, 525 So.2d 675 (La.App. 1st Cir. 1988). The parties hereto have not alleged or shown irreparable injury. Accordingly, the summary judgment granted in favor of State Farm herein is not an appealable judgment.
Because the judgments here at issue are not appealable, this court does not have appellate jurisdiction to adjudicate this case.
We raised the question of our appellate jurisdiction at oral argument and directed *1045 the parties to submit supplemental briefs on the issue. State Farm submitted a supplemental brief to which was attached a "JOINT STIPULATION BY ALL PARTIES" that stated, in part, as follows:
That State Farm in fact paid to plaintiff, Terrie Tugwell, its $100,000.00 policy limits, plus accrued interest. Therefore, the grant of summary judgment in favor of State Farm had the effect of precluding any further liability on the part of that company, and is in effect a dismissal of State Farm necessitating this appeal.
State Farm cites Genina Marine Services, Inc. v. Arco Oil & Gas Company, 499 So.2d 257 (La.App. 1st Cir.1986) as authority for the proposition that the summary judgment granted in its favor is a final judgment and appealable.
Genina is easily distinguished from the instant case. In Genina, the summary judgment granted in favor of the defendant dismissed the plaintiff's suit; the summary judgment granted in the instant case does not dismiss Tugwell's suit against State Farm.
Finally, this court can not consider facts asserted in State Farm's supplemental brief, or in the stipulation attached thereto, that are not in the record on appeal. In Tranum v. Hebert, 581 So.2d 1023, 1026-1027 (La.App. 1st Cir.), writ denied, 584 So.2d 1169 (La.1991) appears the following:
Pursuant to La.C.C.P. art. 2164, an appellate court must render its judgment upon the record on appeal. The record on appeal is that which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcript, jury instructions, judgments and other rulings, unless otherwise designated. La.C.C.P. arts. 2127 and 2128; Official Revision Comment (d) for La. C.C.P. art. 2127. An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. Davis v. Anderson, 451 So.2d 1302 (La.App. 1st Cir.1984). The record before us contains memoranda (briefs), with attached exhibits, which were filed in the trial court. These memoranda and exhibits were not filed in evidence and are not part of the record on appeal. In State ex rel Guste v. Thompson, 532 So.2d 524, 527, n. 2 (La. App. 1st Cir.1988) appears the following:
The briefs of the parties assert facts which are not in the record and refer to exhibits which have not been filed in evidence in the record. An appellate court may not consider evidence which is outside the record. La.C.C.P. art. 2164. The briefs of the parties and the attachments thereto are not part of the record on appeal. Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1st Cir.1984). In addition, we may not consider exhibits filed in the record which were not filed in evidence, unless authorized by law to do so. See, for example, La.C.C.P. arts. 966 and 967.
See also Leyva v. Laga, 549 So.2d 914 (La.App. 3rd Cir.1989). Further, the appellate briefs of the parties herein assert facts not contained in the petition or the record on appeal. The appellate briefs of the parties are not part of the record on appeal, and this court has no authority to consider on appeal facts referred to in appellate briefs, or in exhibits attached thereto, if those facts are not in the record on appeal.
(Emphasis in original)
There is nothing in the record on appeal showing that State Farm paid $100,000 plus accrued interest to Tugwell.
The proper (and fastest) procedure for the parties to have gotten judicial review of the interlocutory judgments here at issue would have been an application for a supervisory writ. At oral argument, the parties consented to a review of these judgments under our supervisory jurisdiction. Although the parties have an adequate remedy available to them by an appeal from a final judgment on the merits, in the interest of judicial economy, we will exercise our supervisory jurisdiction and review the judgments. Bernard Lumber Company, Inc. v. Louisiana Insurance Guaranty Association, 563 So.2d 261 (La.App. 1st Cir.), writ denied, 566 So.2d 981 (La.1990).

*1046 SUMMARY JUDGMENT
The law on summary judgments applicable to this case is set forth in Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d 381, 383-385 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991) as follows:
LSA-C.C.P. art. 966 provides, in pertinent part:
A. The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed....
B. ... The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
LSA-C.C.P. art. 967 provides, in pertinent part:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein....
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
. . . . .
It is well settled that a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits show there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law.... The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted.... Under LSA-C.C.P. art. 967, an adverse party may not rest upon the mere allegations or denials in his pleadings when a motion for summary judgment is made and supported by affidavits....
On motion for summary judgment, it must first be determined that the supporting documents presented by the moving party are sufficient to resolve all material issues of fact; if they are not sufficient, summary judgment should be denied. It is only if they are sufficient that the burden shifts to the opposing party to present evidence that a material fact is still at issue; only at this point may the adverse party no longer rest on the allegations contained in his or her pleadings....
In certain instances, the failure of an adverse party to file counter-affidavits does not automatically entitle the moving party to summary judgment.... However, if the moving party has established both that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law, it is incumbent upon the adverse party to set forth specific facts showing that there is a genuine issue for trial....
Summary judgments are not favored, and any reasonable doubt should be resolved against the mover.... In determining whether material issues have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. (Citations omitted)

VALIDITY OF WAIVER OF UM COVERAGE

(Assignments of error 1 and 3)
Tugwell and Zurich assert that "THE TRIAL COURT ERRED IN RULING *1047 SUMMARILY THAT A 1983 UMBRELLA REJECTION FOR A 1983 LINCOLN AND A 1981 DATSUN APPLIED, WITHOUT ANY OTHER REJECTION, TO A 1985 TOYOTA FOR AN ACCIDENT THAT OCCURRED IN 1987." They further contend that "THE TRIAL COURT ERRED IN NOT GRANTING THE MOTION FOR SUMMARY JUDGMENT FILED BY APPELLANTS WHEREIN THEY SOUGHT SUMMARY JUDGMENT IN THAT THE 1983 UMBRELLA REJECTION COULD HAVE NO APPLICABILITY TO A 1987 ACCIDENT COVERING A 1985 TOYOTA PURCHASED SUBSEQUENT TO THE POLICY YEAR COVERING THE UNINSURED MOTORIST UMBRELLA REJECTION." They cite Tully v. Liberty Mutual Fire Insurance Company, 516 So.2d 435 (La.App. 1st Cir.1987) as authority for their assertions.
State Farm had a contract with Thompson which provided umbrella insurance coverage. La.R.S. 22:5(1)(a). Contracts of insurance issued in Louisiana must contain all provisions required by statute. Block v. Reliance Insurance Company, 433 So.2d 1040 (La.1983). Although the parties to an insurance contract are free to negotiate terms more favorable to the insured, they may not negotiate terms inconsistent with or contrary to law. Fisher v. Morrison, 519 So.2d 805 (La.App. 1st Cir.1987). The legal relations and obligations between State Farm and Tugwell are controlled by the insurance contract and the statutes relating thereto. Booth v. Fireman's Fund Insurance Co., 253 La. 521, 218 So.2d 580 (1968).
Pursuant to La.R.S. 22:1406(D), no automobile liability insurance can be issued in Louisiana unless UM coverage is also provided in limits not less than the limits of bodily injury liability coverage in the policy. At all times relevant hereto[3] La.R.S. 22:1406(D)(1)(a) provided, in pertinent part, as follows:
[P]rovided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.
(Emphasis added)
Further, La.R.S. 22:635 provides as follows:
Any insurance policy terminating by its terms at a specified expiration date and not otherwise renewable, may be renewed or extended at the option of the insurer and upon a currently authorized renewal form and at the premium rate then required therefor for a specific additional period or periods by a certificate or by endorsement of the policy, and without requiring the issuance of a new policy.
These statutes must be construed in reference to each other and in accordance with the general rules of statutory interpretation. La.R.S. 1:1 et seq.; La.C.C. art. 9 et seq.; Scott v. Clark, 583 So.2d 938 (La. *1048 App. 1st Cir.1991). When this is done, the law is clear and unambiguous that once UM coverage is validly rejected, a new rejection of coverage is not required for a renewal or substitute policy issued to the same insured. W. McKenzie and H. Johnson, 15 Louisiana Civil Law Treatise, Insurance Law and Practice, § 105, pp. 224-226 (1986). This rule is applicable to umbrella UM coverage. Southern American Insurance Company v. Dobson, 441 So.2d 1185 (La.1983); Lee v. USAA Casualty Insurance Company, 540 So.2d 1083 (La. App. 1st Cir.), writs denied, 542 So.2d 514, 515 (La.1989); W. McKenzie and H. Johnson, supra, § 103, pp. 222-223.
Examining the nature of the insurance contracts (policies) herein is helpful in deciding the legal relations between the parties. State Farm's primary UM coverage of $100,000 is found in a vehicle or automobile insurance contract. Vehicle insurance is defined in La.R.S. 22:6(3) as follows:
Insurance against loss or damage to any land vehicle or aircraft or any draft or riding animal or to property while contained therein or thereon or being loaded or unloaded therein or therefrom, and against any loss or liability resulting from or incident to ownership, maintenance, or use of any such vehicle or aircraft or animal.
Insurance against accidental death or accidental injury to individuals including the named insured while in, entering, alighting from, adjusting, repairing, cranking, or caused by being struck by a vehicle, aircraft, or draft or riding animal, if such insurance is issued as part of insurance on the vehicle, aircraft, or draft or riding animal, shall be deemed to be vehicle insurance.
This type of insurance focuses on the risk of liability arising out of the ownership, maintenance and use of vehicles (automobiles) by the insured. W. McKenzie and H. Johnson, supra, §§ 41-85, pp 112-214. State Farm's umbrella insurance contract is a [general] liability insurance contract. Liability insurance is defined in La.R.S. 22:6(4) as follows:
Insurance against the liability of the insured for the death, injury or disability of an employee or other person, and insurance against the liability of the insured for damage to or destruction of another person's property.
This type of insurance focuses on all risks of liability, except those that might be specifically excluded from coverage. W. McKenzie and H. Johnson, supra, §§ 161-170, pp. 283-308. State Farm's umbrella policy is also an excess policy. In Coates v. Northlake Oil Company, Inc., 499 So.2d 252, 255 (La.App. 1st Cir.1986), writ denied, 503 So.2d 476 (La.1987), this court discussed the nature of an excess liability (umbrella) policy as follows:
Umbrella liability insurance is a broad blanket excess legal liability contract which fills the gaps in an insured's liability program. A standard feature of umbrella policies is that the amount an insured is required to pay before the coverage takes effect is much lower in those areas not covered in the primary policy. This feature means that (1) coverage is provided which would otherwise have required separate policies and (2) exclusions in primary coverage are, in effect, eliminated for losses above this lower amount. The lower amount is commonly known in the insurance industry as the "retained limit." J. Long and D. Gregg, Property and Liability Insurance Handbook 603 (1965).
The whole theory of umbrella insurance is that the insured protects himself against catastrophic loss by the procurement of insurance coverage which takes up where his primary policy leaves off. Thus, umbrella coverage is to be regarded as true excess over and above any type of primary coverage. Safeco Insurance Co. v. Insurance Company of North America, 522 S.W.2d 867, 869 (Tenn.1975); 8A J. Appleman and J. Appleman, Insurance Law and Practice, § 4909.85 at 453-54 (Rev. ed. 1981).
See also Lindsey v. Poole, 579 So.2d 1145 (La.App. 2d Cir.), writ denied, 588 So.2d 100 (La.1991).
Tugwell and Zurich assert the State Farm umbrella policy issued effective August 1, 1986, was a new policy (and not a *1049 renewal or substitute policy), there was no valid rejection of UM coverage for this new policy, and, therefore, this policy provided UM excess coverage of $1,000,000. State Farm responds that its umbrella policy issued effective August 1, 1986, was a renewal or substitute policy for the policy originally issued in 1983, the initial rejection of UM coverage was valid and applies to all renewal and substitute policies as a matter of law, and, therefore, it provided no excess UM coverage to Tugwell under its umbrella policy.
To resolve this dispute, we must define new, renewal and substitute policies for purposes of La.R.S. 22:1406(D). Clearly, the policy issued in 1983 was a new policy. State Farm does not contest this. Further, Tugwell and Zurich do not contest that the rejection of UM coverage for this policy was valid. If a named insured increases the limits of his liability coverage, a new policy comes into existence for purposes of La.R.S. 22:1406(D); this new policy is not covered by the provision about renewal and substitute policies, and if a new rejection of UM coverage is not executed, the UM coverage of the policy increases in an amount equal to the face limits of the liability coverage. Gaar v. Sowards, 573 So.2d 499 (La.App. 1st Cir.), writ denied, 569 So.2d 990 (La.1990); Guilbeau v. Shelter Mutual Insurance Co., 549 So.2d 1250 (La.App. 3d Cir.1989); Gilbert v. Waddell, 501 So.2d 330 (La.App. 4th Cir.), writs denied, 505 So.2d 57, 58 (La. 1987). In the instant case, the uncontested facts show that the limits of the liability coverage of the umbrella policy have not been increased; they stayed in the same amount of $1,000,000 from 1983 through July of 1987.
In Bryant v. Viking Insurance Company of Wisconsin, 579 So.2d 1241, 1242-1243 (La.App. 3rd Cir.1991), the court discussed the distinction between renewal, substitute and reinstated[4] policies as follows:
To determine what a renewal policy is, we need only look at the statute defining it. La.R.S. 22:636.1(A)(5) defines a "renewal" policy as one issued and delivered to replace" at the end of the policy period" a policy previously issued and delivered by the same insurer. A renewal can therefore occur only at the end of the policy period it renews; it is not a renewal if the second issuance occurs after the end of the first policy period. A renewal contemplates uninterrupted coverage.

In the present case there was a period of about five weeks between the lapse of the first policy and the issuance of the second one. During this five weeks, there was no insurance, no contractual relationship between insurer and insured.
Viking relies on two cases from this circuit, Mouton v. Guillory, 494 So.2d 1374 (La.App. 3rd Cir.1986), and Myers v. Thibeaux, 365 So.2d 266 (La.App. 3rd Cir.1978). These cases apply the statute, and say that a renewal or substitute policy does not have to contain evidence of rejection of UM once the initial policy establishes a rejection. The distinguishing feature between these two cases, and our present case, is that the renewals took place regularly at the end of each successive policy period. In other words, they were renewals as defined in our law. Our present case is not a renewal.
Nor was this a substitute policy, because the second policy here was not for different coverage. The distinction between a substitute and reinstated policy is given in 18 Couch on Insurance 2d §§ 69.1-69.3, Revival and Reinstatement. If there is coverage and an agreement is made for a different coverage, there is a substitution of policies. To reinstate an insurance policy means to restore the insured to all the benefits accruing *1050 under the policy contract. For there to be a reinstatement, it is necessary that there be an interval during which the insured no longer is covered by insurance.
(Emphasis added)
Changes in policy endorsements do not convert a renewal policy into a new policy. Mouton v. Guillory, 494 So.2d 1374 (La. App. 3d Cir.1986). Changes in limits (other than increasing them), changes in vehicles and changes in coverages do not convert a renewal policy into a new policy. Moore v. Young, 490 So.2d 519 (La.App. 4th Cir. 1986); Myers v. Thibeaux, 365 So.2d 266 (La.App. 3d Cir.1978).[5] Even multiple changes of vehicles covered by a fleet vehicle (automobile) insurance policy will not convert a renewal fleet policy into a new fleet policy. In Bordelon v. Jackson, 499 So.2d 392, 394 (La.App. 4th Cir.1986), writ denied, 500 So.2d 412 (La.1987), appears the following:
Plaintiff also argues that the Archdiocese should be required to reject UM coverage on each vehicle covered under the USF & G policy each time a vehicle was added to its fleet. We disagree. The policy does not describe each covered vehicle, nor does it require a new policy each time a vehicle is added or deleted. The named insured chose to have the uninsured motorist rejection continue in effect for each car added to the policy. We find no prohibition in the law for this type policy, nor do we find any authority requiring the named insured to reject UM coverage each time a vehicle is added to the policy.
The Tully case, cited by Tugwell and Zurich, is distinguishable from the instant case. While he was unmarried, Mr. Tully obtained a vehicle (automobile) primary insurance policy with liability limits of $25,000 and UM coverage of $10,000 for a vehicle he owned. Mr. Tully executed a written form for the lower UM limits. Mr. Tully subsequently married. At the time of the marriage, Mrs. Tully owned a vehicle as her separate property. About two months after the marriage, Mr. Tully had his insurance agent add Mrs. Tully as a named insured in his policy, add Mrs. Tully's separate vehicle as an insured vehicle, increase the limits of the liability coverage to $300,000 for both vehicles, and add comprehensive and medical expense coverages. The policy subsequently issued showing these changes also provided for UM coverage of $5,000. The case does not reflect that Mrs. Tully ever agreed to the lower limits or that Mr. Tully agreed to the reduction to $5,000. The Tully court concluded that the policy issued to the Tullys was a new policy. This result is correct for two reasons: (1) the policy increased the prior limits of liability coverage, and (2) Mr. Tully's selection of lower limits before he was married was not binding on Mrs. Tully for her separately owned vehicle (which was being driven by Mr. Tully when he was killed). The language in Tully pertaining to addition of vehicles and insureds to a policy is dictum. Further, Tully did not involve an umbrella liability policy.
Tugwell and Zurich assert "the applicable umbrella policy was cancelled (Transcript, page 291) for non-payment of premiums" and ask "would not the cancellation of the umbrella policy have required another rejection when it was reinstated?" The statement that the "umbrella policy was cancelled"[6] is not correct legally or factually. The State Farm umbrella policy states that "This policy can be cancelled by... us.... If we choose to cancel the policy, we will send notice at the address shown in the policy. We will give at least 30 days' notice of the date of our cancellation. If we cancel, the refund will be pro-rated." Further, La.R.S. 22:636 and 22:636.1 regulate the cancellation of insurance policies. These statutes are discussed in W. McKenzie and H. Johnson, supra, § 224, pp. 412-413 as follows:

*1051 The statutes set forth the minimum notice periods to which the insured is entitled. The policy may grant the insured a greater delay between notice and cancellation. The insured must be afforded the full delay period. The day of notice is not counted, and the cancellation cannot be effective before the end of the last day of the notice period. The 1985 amendments to LSA-R.S. 22:636(A) and 636.1(J) make it clear that, when notice is given by mail, "the running of the time period between the date of mailing and the effective date of termination of coverage shall commence upon the date of mailing." The apparent purpose of these amendments is to negate any argument that the time period commenced upon receipt of notice. If the notice states an effective date of cancellation which does not afford the insured the full delay to which he is entitled, then the cancellation becomes effective upon expiration of the required delay.
(Emphasis added; headnotes omitted)
The uncontested facts of record show that (1) as of August 26, 1986, State Farm had not received from Thompson the premium for the umbrella policy, due on August 1, 1986, (2) on August 26, 1986, State Farm sent a notice of cancellation to Thompson advising him that the umbrella policy would be canceled for non-payment of premium effective October 5, 1986, unless the premium payment was received on or prior to that date, (3) on or before August 29, 1986, State Farm received payment of the umbrella policy premium from Thompson, and (4) State Farm's umbrella policy #XX-XX-XXXX-X was continued in force effective August 1, 1986. There was no cancellation of the policy as a matter of law or fact.
The umbrella policy issued effective August 1, 1986, is not a reinstated policy because there was no interval during which Thompson was not covered by insurance between 1983 and 1987. That policy is not a new policy because the uncontested facts show that between 1983 and 1987 (1) it was renewed annually pursuant to its own terms and kept the same policy number, (2) it provided uninterrupted coverage, (3) Thompson was at all times a named insured, and (4) the limit of liability at all times was $1,000,000. Thus, the policy was either a renewal policy or a substitute policy, and, in either event, it was unnecessary as a matter of law for Thompson to execute another rejection of UM coverage. Changes in vehicles, coverages and limits of liability in the underlying (primary) vehicle (automobile) policies did not convert the umbrella policy from a renewal or substitute policy into another type (new) of policy.
These assignments of error are without merit.

EXISTENCE OF CONTESTED ISSUES OF MATERIAL FACT

(Assignment of error 2)
Tugwell and Zurich assert "THE TRIAL COURT ERRED, ALTERNATIVELY, BY NOT AT LEAST FINDING THAT THESE ISSUES WERE ISSUES OF FACT FOR THE JURY." They contend "the arguments advanced under Assignment of Error No. 1 certainly raise issues of a fact that should have been decided by the jury, and not summarily, and such would require that this matter be reversed and remanded."
Initially, it must be noted that the appellate briefs of Tugwell and Zurich do not specifically state what are the contested issues of material fact. Secondly, in their motion for summary judgment, Tugwell and Zurich asserted that "there is no dispute as to material facts on this issue and that the law set forth in the attached memorandum, movers are entitled to a summary judgment herein holding that the primary uninsured motorist coverage benefiting the plaintiff is provided by State Farm in its umbrella policy insuring the Thompson vehicle with limits of $1,000,000." Finally, we have reviewed the exhibits submitted by the parties with their motions for summary judgment, and we find no contested issues of material fact.
This assignment of error is patently without merit.

*1052 DECREE
For the foregoing reasons, the interlocutory judgments of the trial court which denied the motion for summary judgment by Tugwell and Zurich and granted summary judgment in favor of State Farm that State Farm's liability is limited to $100,000 in uninsured motorist coverage are affirmed. Tugwell and Zurich are cast for the cost of this appeal. This action is remanded to the trial court for further proceedings in accordance with law.[7]
AFFIRMED AND REMANDED.
CRAIN, J., concurs in the result on the issue of waiver of universal motorist coverage on the umbrella policy.
SHORTESS, J., dissents with reasons.
SHORTESS, Judge, dissenting.
I dissent from the majority's holding that there are no contested issues of material fact in this case and that summary judgment was thus proper. The question asked Tugwell when the policy was reinstated/renewed, "Is any change desired in Uninsured/Underinsured Motorist coverage under the Personal Liability Umbrella Policy?", is ambiguous. There is a question of material fact whether Tugwell believed at that point that he had uninsured motorist coverage. This and other questions of fact raised in the cross motions made summary judgment inappropriate in this case.
For the foregoing reason, I respectfully dissent.
NOTES
[1] The application and the policy of insurance issued pursuant to the application are in the name of State Farm Fire and Casualty Company, rather than State Farm Mutual Automobile Insurance Company. State Farm has not suggested that this is a distinction that makes a difference and neither shall we.
[2] The court minutes show that the trial court rendered oral judgments that (1) granted State Farm's motion for summary judgment and (2) denied Zurich's motion for summary judgment. Only the oral judgment in favor of State Farm was reduced to writing and signed; the oral judgment denying Zurich's motion for summary judgment was not reduced to writing and signed. See La.C.C.P. arts. 1911, 1912 and 1918.
[3] The accident herein occurred on April 4, 1987. Pursuant to Acts 1988, No. 203, La.R.S. 22:1406(D)(1)(a)(i) was amended to provide, in pertinent part, as follows:

Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates.
(Emphasis added to show changes)
Pursuant to Section 2 of Act 203 "This Act shall apply to policies issued or renewed with effective dates on or after the effective date of this Act." The effective date of Act 203 was September 9, 1988. The amendments provided in Act 203 do not affect this case. Bryant v. Viking Insurance Company of Wisconsin, 579 So.2d 1241 (La.App. 3d Cir.1991). Pursuant to Acts 1991, No. 1031, this provision will become La. R.S. 22:4009(D)(1)(a)(i) effective January 1, 1993.
[4] As previously indicated in footnote 3, Act 203 of 1988 providing for reinstated policies is not applicable in this case. In this case, if there had been an interval during which there was no coverage under the umbrella policy, the next policy issued would have been a new policy under the then existing law. We included the definition of a reinstated policy in this quote only for the purpose of giving perspective to the definitions of new, renewal and substitute policies.
[5] In Myers, 365 So.2d at 268, the court stated that "... the substitute policy was issued because Myers changed cars and required slightly different limits and coverage."
[6] Liability insurance policies may terminate by (1) cancellation, (2) expiration, (3) nonrenewal, or (4) rescission. W. McKenzie and H. Johnson, supra, §§ 223-227, pp. 408-422.
[7] The record before us does not show that the trial court, in its capacity as a court of original jurisdiction, has rendered a judgment on whether or not the claims of Tugwell and Zurich against State Farm should be dismissed. Since the trial court has not acted on whether or not to dismiss State Farm under its original jurisdiction, we can not act on this issue pursuant to our appellate or supervisory jurisdictions. Therefore, it is necessary for us to remand this case to the trial court for further proceedings. If the trial court subsequently dismisses the claims of Tugwell and Zurich against State Farm with prejudice, that will be a final judgment and, thus, will be appealable. La.C.C.P. arts. 1673, 1844 and 2083.