744 So.2d 635 (1998)
SOUTH CENTRAL BELL
v.
MILTON J. WOMACK & ASSOCIATES, INC., et al.
No. 97 CA 2413.
Court of Appeal of Louisiana, First Circuit.
November 6, 1998.
Opinion Denying Rehearing February 4, 1999.
*636 George M. Cotton, Baton Rouge, for Plaintiff-Appellant.
John R. Walker, Lafayette, for Defendants-Appellees.
Before SHORTESS, C.J., and CARTER and WHIPPLE, JJ.
SHORTESS, Chief Judge.
This case involves a claim for damages resulting from the severing of underground telephone cables by a construction company. South Central Bell (plaintiff)[1] appeals the judgment of the trial court finding total damages of $28,597.10, but casting Milton J. Womack, Inc.[2] (defendant), and Cigna Property and Casualty Insurance Company, its insurer, with liability for only 30% of the damages.
In 1991, defendant was the contractor for the construction of a social science building on the Baton Rouge campus of Southern University. During the construction process, there was a question about the location of the underground bank, which housed the university's telephone cables. The phone bank interfered with the southern edge of the building, and initially Southern officials explored with plaintiff the feasibility of moving the phone bank. Plaintiff's engineer, Andrew Eames, informed Southern's officials that moving the phone bank would be too costly, so it was necessary for defendant to find the exact location of the phone bank and redesign the building, in order to refrain from damaging the bank.
Plaintiff's location contractor, Byers Engineering Company, had attempted to find the exact location of the phone bank. However, on August 23, 1991, Albert Dickey, plaintiffs service technician, went to the construction site. Dickey met with Ed Ramsur, defendant's project superintendent, and informed Ramsur the phone bank was located straight across the southern edge of the building. On Saturday, August 24, 1991, Dickey and Eames returned to the construction site and determined the phone bank was not positioned in a straight line but turned to the south. Dickey and Eames marked the location of the phone bank with orange paint. On August 26, 1991, defendant began drilling for shafts. On September 10, 1991, while defendant was drilling for a shaft, the phone bank was severed. Defendant stipulated at trial that it did not call the "DOTTIE" (the notification center) line in compliance with the Louisiana "Dig Law" in order to have plaintiff and other utilities locate and mark their lines.
*637 Plaintiff filed a petition for damages against defendant and Cigna for the cost of repairing the phone bank. After trial, judgment was rendered in favor of plaintiff and against defendant and Cigna for $8,579.13.[3] On December 5, 1996, plaintiff filed a motion for new trial, which the trial court denied. Plaintiff has appealed.
Plaintiff asserts four assignments of error, stating the court erred: 1) in failing to advise plaintiff of the potential conflict of interest arising from the judge's private practice before her pro tempore judicial appointment and her family's interest in a case involving plaintiff; 2) in failing to find defendant's stipulated failure to comply with the Underground Utilities and Facilities Damage Prevention Law was the legal cause of the damage; 3) in holding plaintiff had a legal obligation to do more than locate its underground lines and leave markings of bright orange paint; and 4) in rejecting plaintiff's proof of damages and substituting the court's own measure of damages.

ASSIGNMENT OF ERROR NUMBER ONE
After judgment was rendered on November 8, 1996, plaintiff filed a motion for new trial, which was denied. Plaintiff appealed the case. Plaintiff contends that after filing the motion for new trial, it became aware of information that would have compelled it to request the pro tempore sitting judge to recuse herself from hearing the matter. Plaintiff alleged the pro tempore judge was listed as counsel for persons and corporations that were defendants in a pending suit against plaintiff, similar to the case at bar. On March 20, 1997, plaintiff filed a second motion for new trial.
Plaintiff contends since the matter of the pro tempore judge's participation at trial was not questioned earlier, its second motion for new trial should be granted. Under Louisiana Code of Civil Procedure article 2164, an appellate court must render its judgment based upon the record on appeal and cannot consider evidence that is not part of the record.[4] All the information plaintiff alleges regarding the trial judge is not a part of the record. In fact, plaintiff's allegations are included only in its brief. The appellate briefs of parties are not a part of the record on appeal, and this court does not have the authority to consider facts referred to in appellate briefs, if those facts are not in the record on appeal.[5] Therefore, these facts are not before this court and cannot be considered.
Plaintiff requests that this court grant its second motion for new trial. We have held, "Neither the Louisiana Code of Civil Procedure nor any other law within our ken or to which we have been cited countenances or permits the filing of a second motion for a new trial by the party who has been denied relief on his first motion."[6] Since plaintiff's motion for new trial was denied, a second motion for new trial cannot be granted. Therefore, this assignment of error lacks merit.[7]

ASSIGNMENTS OF ERROR TWO AND THREE
Because these assignments of error are closely related, we will address them simultaneously. Plaintiff contends defendant's *638 failure to comply with the Underground Utilities and Facilities Damage Prevention Law was the legal cause of the damage. Furthermore, plaintiff asserts the court erred in holding it had a legal obligation to do more than locate its underground lines and leave markings of orange paint.
Louisiana Revised Statute 40:1749.13 provides, in pertinent part:
A. Except as provided in this Section, no person shall excavate or demolish in any street, highway, public place or servitude of any operator, or near the location of an underground facility or utility, or on the premises of a customer served by an underground facility or utility without having first ascertained in the manner prescribed in Subsection B of this Section, the specific location as provided in R.S. 40:1749.14(D) of all underground facilities or utilities in the area which would be affected by the proposed excavation or demolition.
B. (1) Except as provided in R.S. 40:1749.15, prior to any excavation or demolition, each excavator or demolisher, including cable television owners or operators, shall serve telephonic notice of the intent to excavate or demolish to the regional notification center or centers serving the area in which the proposed excavation or demolition is to take place. Such notice shall be given to the notification center at least forty-eight hours, but not more than one hundred twenty hours, excluding weekends and holidays, in advance of the commencement of any excavation or demolition activity.
According to this provision, excavators must ascertain the location of underground facilities by calling the notification center (DOTTIE) at least forty-eight but not more than 120 hours prior to excavation. Defendant stipulated at trial no request was made for a location of the underground telephone cables within five days of drilling. Plaintiff contends the damage to the phone lines was the result of defendant violating the express provisions of the statute and thus, this violation is the legal cause of the damage.
In Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289, 292-93 (La.1993), the supreme court stated, "The violation of a statute or regulation does not automatically, in and of itself, impose civil liability. Civil responsibility is imposed only if the act in violation of the statute is the legal cause of damage to another." In this case, the trial court found both plaintiff and defendant were negligent.
The court found defendant was negligent by not calling DOTTIE within five days before excavation. Ramsur testified for defendant that it was agreed that an official from Southern would contact plaintiff to locate the phone bank. The trial court concluded defendant was negligent by "entrusting this responsibility to someone else (i.e. Southern University) who did not do it properly." Ramsur stated he met with Dickey on August 23, 1991, and Dickey showed him the location of the center of the phone bank and that the cable ran in a straight line. However, Dickey testified that on August 24, 1991, he and Eames went back to the site and found the phone bank was not in a straight line as he informed Ramsur the previous day, but it turned at the south end of the building. Dickey stated he and Eames marked the exact location of the lines with orange paint. The court also found defendant negligent in failing to see the orange paint marks left by Dickey locating the underground cable.
Although plaintiff left the orange paint marking the location of the phone bank, Dickey's return trip was on a Saturday when neither Ramsur nor anyone else from defendant's construction crew was present. Also, plaintiff did not inform defendant that the location of the phone bank it was given on August 23 was erroneous and a new location was found. Dickey testified he did not call Ramsur or any other person in defendant's construction *639 crew to say he had found the correct location of the phone bank and left the orange markings on Saturday, August 24. The trial court found plaintiff negligent "in that Mr. Dickey ... told Womack the line[s] ran straight between two markers when it did not. Further, [plaintiff] was negligent in not properly conveying the information when it learned that the line[s] did not in fact run straight or that it had been marked in a different location." Finally, the court found plaintiff 70% at fault and defendant 30% at fault.
A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong.[8] In order to reverse, the court of appeal must: (1) find from the record that a reasonable factual basis for the decision of the trial court does not exist, and (2) find that the record affirmatively establishes the decision is clearly wrong or manifestly erroneous.[9] After a review of the record, we do not find the trial court was manifestly erroneous in finding both parties negligent or in its attributing each party its percentage of fault. Defendant's violation of the statute alone was not the legal cause of the damage. Plaintiff's erroneous information was a contributing factor.
Plaintiff contends its only legal obligation was to locate the phone lines and mark them with orange paint. However, in light of the fact that plaintiff informed defendant the lines were located in a position where they were not and personally marked the erroneous position, its legal obligation did extend beyond marking the correct location with orange paint, especially when it marked the location with the orange paint on a Saturday when defendant was not present at the site. Plaintiff should have contacted defendant and corrected its mistake. The court was not erroneous in its findings and these assignments of error lack merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Plaintiff contends the court erred in rejecting its proof of overhead and indirect expenses. It maintains the court erred further in concluding it did not sufficiently prove its damages by providing the actual hourly rate paid to its workers to correct the damaged lines and in finding the minimum hourly wage was a sufficient compensation wage.
The trial court stated in its reasons, in pertinent part:
The Court finds that the hourly rate calculated is not based upon the actual hourly rate paid to the actual workers who were doing the repair work, but rather it is a [fictitious] hourly rate based upon the average wage of the average SCB employee employed by the construction and maintenance divisions of SCB. In this case, SCB knew which employees it had working on the repairs and how much it paid those employees, and could have calculated the actual cost of employing those individuals, but chose not to do so.
The court went on to cite Mut v. Newark Insurance Company,[10] which states:
Where invoices, statements or records of amounts expended for repairs are available, such records constitute the best evidence, and should be produced in proof of plaintiff's claim. In the absence of such records, the testimony of the person or persons making the repairs may be offered as proof. If neither is shown to be available, courts may allow recovery upon the offer of such evidence as fairly and reasonably substantiates plaintiff's claim of payment.
*640 Plaintiff refers to the testimony of its accountant, Karen Moore, who stated the "fully-loaded" labor rate for the construction work force was $60.12 per hour and for the maintenance work force was $67.59 per hour. Moore testified the fully-loaded labor hourly rate included, in addition to the salary of plaintiff's employees, a rate that accounted for corporate overhead, including medical benefits, investment-related cost, etc. Moore also testified this amount even included some legal expenses for this claim. However, in the "summary of cost to repair damages" report plaintiff introduced into evidence, the "unloaded" salary rate for the construction group was $28.14 per hour and for the maintenance group was $26.72 per hour. Ted Sumner, plaintiffs first-line (maintenance) supervisor, testified the labor rate was at least in the $20.00 to $25.00 per hour range.
Plaintiff bears the burden of proving with legal certainty every item of damages claimed.[11] Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point that is reasonably within that discretion.[12] In this case, we find the trial court abused its discretion in awarding damages. While the discretion provided to the trial court is vast, in granting awards it should be reasonable. The evidence presented by plaintiff for labor salary rates included various figures for overhead and other rates. However, evidence was not presented to show these employees were paid the minimum-wage hourly rate used by the trial court. In fact, the actual salary rates of the workers were $28.14 and $26.72 per hour as shown in the damage report. Sumner testified the rate was around $20.00 or $25.00 per hour. While the other rates and overhead rates may have inflated the salary of the workers, either rate stated by Moore or Sumner would have been reasonable based upon the evidence presented at trial, rather than a minimum hourly wage.
The damage report showed the construction force worked for a total of 695 hours and the maintenance group worked for a total of 32.75 hours. Using the salary rate for each work force, the total cost of labor is computed as follows:

 Hours Rate/Hour Cost
 Construction Work Force 695.00 $26.72 $ 18,570.40
 Maintenance Work Force 32.75 $28.14 $ 921.59
 ____________
 Total Labor Cost $ 19,491.99
 Based upon the adjusted labor cost the summary of the total recoverable damages are as
follows:
 Labor Cost $ 19,491.99
 Subcontractor Bills $ 4,212.90
 Materials $ 22,048.16
 Less Salvage (-) $ [13]
 ____________
 Total Recoverable Damages $ 44,705.05

Therefore based upon the adjusted figures above, defendant is responsible for 30% of the total recoverable damages of $44,705.05, or $13,411.52.

*641 CONCLUSION
For the foregoing reasons, the judgment of the trial court in favor of plaintiff, Bell-South Telecommunications, Inc., and against defendants, Milton J. Womack, Inc., and Cigna Property and Casualty Insurance Company is amended to increase the damages awarded from $8,579.13 to $13,411.52, and as amended, the judgment is affirmed. Defendant's motion to strike is rendered moot. Costs are assessed one-half to plaintiff and one-half to defendants.
AMENDED, AND AS AMENDED, AFFIRMED. MOTION TO STRIKE RENDERED MOOT.

ON APPLICATION FOR REHEARING
Plaintiff contends in its motion for rehearing that this court erred in stating the "Second Motion for New Trial is not a part of the record in the Court of Appeal, and...the allegations are made only in its appellate brief, which was not a part of the record." In its decision dated November 6, 1998, this court stated "All the information plaintiff alleges regarding the trial judge is not a part of the record," i.e., the facts are not in the record. We did not state the second motion for new trial was not a part of the record.
All the allegations plaintiff alleges regarding the trial judge are contained in its memorandum in support of motion for new trial and in its appellate brief. This court has held that briefs, memoranda, and attachments that have not been filed into evidence do not form part of the record on appeal. See Our Lady of the Lake Hosp. v. Vanner, 95-0754 p.4 (La.App. 1st Cir. 3/5/95), 669 So.2d 463, 465; and Tugwell v. State Farm Ins. Co., 597 So.2d 1039, 1045 (La.App. 1st Cir. 1992). In Our Lady of the Lake, the record contained a memorandum in support of a peremptory exception, and this court stated, "We are not authorized to consider as part of the record exhibits attached to a peremptory exception or a memorandum in support of a peremptory exception, and as this memorandum and exhibits were not filed in evidence, they are not part of the record on appeal." In Tugwell, this court stated, "Further, the appellate briefs of the parties herein assert facts not contained in the petition or the record on appeal. The appellate briefs of the parties are not part of the record on appeal, and this court has no authority to consider on appeal facts referred to in appellate briefs, or in exhibits attached thereto, if those facts are not in the record on appeal."
Therefore, plaintiff's contention lacks merit, and its application for rehearing is denied.
REHEARING DENIED.
NOTES
[1] South Central Bell is currently doing business as BellSouth Telecommunications, Inc.
[2] Plaintiff originally filed suit against Milton J. Womack & Associates, Inc., and later amended its petition to add as defendants Milton J. Womack, Inc., and Cigna Property and Casualty Insurance Company.
[3] The trial court found total recoverable damages in the sum of $28,597.10, and plaintiff was attributed 70% of fault and Womack was attributed 30% of fault.
[4] J. Ray McDermott, Inc. v. Morrison, 96-2337, pp. 7-8 (La.App. 1st Cir.11/7/97), 705 So.2d 195, 201, writs denied, 97-3055, 97-3062 (La.2/13/98), 709 So.2d 753, 754.
[5] Id.
[6] Palmer & Palmer v. United Inv. Corp., 255 So.2d 611, 612 (La.App. 1st Cir.1971), writ denied, 260 La. 689, 257 So.2d 151 (1972).
[7] Defendant filed a motion to strike all the aforementioned information contained in assignment of error number one from plaintiff's brief; however, in light of our treatment of this matter, the motion is moot.
[8] Stobart v. State, 617 So.2d 880, 882 (La. 1993).
[9] Id.
[10] 289 So.2d 237, 253-54 (La.App. 1st Cir. 1973), writs denied, 290 So.2d 910, 912 (La. 1974).
[11] Emoakemeh v. Southern University, 94-1194, p. 8 (La.App. 1st Cir.4/7/95), 654 So.2d 474, 479.
[12] Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
[13] The court gave defendant and Cigna a credit for the amount of the original cable, which plaintiff salvaged, and for the amount of the salvaged cable, which was used for temporary repairs.